## SMIETANKA, Internal Revenue Collector, v. ULLMAN.

(Circuit Court of Appeals, Seventh Circuit. July 20, 1921.)

No. 2861.

Internal revenue ⇐⇒27(1)—Liberty Bonds, converted to 4¼ per cent. bonds less than six months before death, not receivable at face value to pay transfer tax.

Under Third Liberty Loan Act. § 14 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6829o), Liberty Loan 4 per cent. bonds issued to subscriber November 15, 1917, and converted by him into Third Liberty 4¼ per cent. bonds issued to him May 9, 1918, were not, on his death May 27, 1918, receivable at face value in payment of the federal estate tax on the estate of the deceased. Section 14 requires the holding of the 4¼ per cent. bonds, however acquired, to have been for a time not less than six months next preceding the death, in order to be receivable at face value in payment of a tax.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by Charlotte T. P. Ullman, in her own right and as executrix, against Julius F. Smietanka, Collector of Internal Revenue, to require acceptance of Liberty Bonds at face value in payment of transfer tax. From a judgment for complainant, defendant appeals. Reversed, demurrer ordered sustained, and bill dismissed.

The bill charges that appellee is executrix and sole heir under the will of her deceased husband, who died May 27, 1918; that October 22, 1917, he subscribed for $20,000 of Second Liberty Loan 4 per cent. bonds, which were issued to him November 15, 1917; that pursuant to section 14 of the Act of

---

⇐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

April 4, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6829o)[1] (the Third Liberty Loan Act), he presented these bonds for conversion into Third Liberty 4¼ per cent. Bonds, which, for the same aggregate amount, were issued to him May 9, 1918, and remained in his possession until his death, about three weeks thereafter; that the federal estate tax upon the estate of the deceased was assessed at $18,285.57, in payment of which appellee tendered to appellant as collector of internal revenue $18,000 of these 4¼ per cent. bonds at par, with sufficient cash to make the total of the estate tax. These bonds were then, and at the time bill was filed of the market value of $94.38. Appellant refused to receive the bonds as payment on such estate tax. The bill asks that the collector be required to receive these bonds at face value in such payment, and to enjoin the collector from otherwise attempting to collect such estate tax. Appellant's demurrer to the bill was overruled, and appellant elected to stand by its demurrer, and decree was entered, finding the facts as in the bill stated, and granting relief as prayed.

James A. Miller, of Chicago, Ill., for appellant.
Frederic Ullmann, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The government contends that the 4¼ per cent. Third Liberty Bonds, not having been held at least six months prior to the death, are not under the terms of section 14 receivable in payment of the estate tax. The executrix maintains that the time deceased held the 4 per cent. bonds should be reckoned in the holding period, in which case it would exceed the six months.

It goes without saying that unmatured obligations of the government are not generally receivable in payment of taxes which the government levies. If this were not so, the very object of making long-time loans might be frustrated through thus requiring the government to pay these obligations far in advance of the time for which it was deemed necessary for the government to use the borrowed funds. It is evident that the receivability of such unmatured obligations in payment of any taxes due the government enhances the desirability of the obligation as an investment, and facilitates their sale. But it is for the government by its legislation expressly to fix the conditions and terms upon which its unmatured obligations may be so receivable, which conditions and terms may not by implication or construction be extended beyond the plain provisions of the statute fixing them.

Section 14, under which alone there is provision for receivability of these bonds for taxes due the government, prescribes that "any bonds

[1] "Sec. 14. That any bonds of the United States bearing interest at a higher rate than four per centum per annum (whether issued under section 1 of this act or upon conversion of bonds issued under this act or under said act approved April twenty-fourth, nineteen hundred and seventeen), which have been owned by any person continuously for at least six months prior to the date of his death, and which upon such date constitute part of his estate, shall, under rules and regulations prescribed by the Secretary of the Treasury, be receivable by the United States at par and accrued interest in payment of any estate or inheritance taxes imposed by the United States, under or by virtue of any present or future law upon such estate or the inheritance thereof."

of the United States bearing interest at a higher rate than four per centum per annum * * * which have been owned by any person continuously for at least six monthes prior to the date of his death * * * " shall be receivable for estate taxes. It is very plain that, where one subscribes for and acquires bonds under the act and dies before the expiration of six months, still holding the bonds, the definite terms of the act would prevent their receivability in payment of a federal estate tax. Was it the intention of Congress to extend to the holders of 4 per cent. bonds, who converted them into 4¼ per cents, a larger privilege than was given to original subscribers and purchasers of the later issue, through permitting them to tack onto the period of holding of the later issue the time during which they had held the earlier bonds, in order to comply with the statutory requirement of six months' continuous holding? There is nothing in the circumstances in which the act was passed that would suggest such intended advantage. The First and Second Liberty Loans had been sold, their billions of dollars having presumably greatly strained the government's borrowing powers. It was found necessary to float a third loan for yet more billions, and was deemed advisable to augment its attractiveness for purposes of investment. The interest rate was increased to 4¼ per cent., and the feature added of receivability in payment of estate taxes which the federal government might impose, which the prior issues did not include.

It was to the interest of the government to maintain the standing of its previous bond issue, as bearing upon the desirability of its obligations generally, and the facility with which future loans might be floated at times of great stress. To this end means were provided, through provisions for conversion, whereby the holders of the prior loan might convert them into bonds of the third issue. But there is nothing in the situation to suggest an intention to grant to holders of the converted bonds any larger or better privilege or immunity in this respect than would be enjoyed by those who would subscribe for the third issue, and we find nothing in the wording of section 14 from which it would follow that the time of prior holding of the 4 per cent. bonds may be added to the time following their conversion into 4¼ per cents in order to fulfill the statutory requirements of six months' continuous holding of the latter before the right of receivability for federal estate taxes arises.

It is insisted for appellee that section 14, so construed, would work such unwarranted discrimination against that class of holders whose death occurred within the six months period after the issue of the bonds as to render unconstitutional so much of section 14 as made possible such result. We fail to see any merit whatever in the contention. The classification was reasonable and proper to be made. In this respect it treated all persons alike, for, while "no man knoweth the day of his death," the uncertainty is not peculiar to any class, but is present with all persons. The six months provision would have the tendency of inducing in every one a disposition to hold at least so many of the 4¼ per cent. bonds as might be deemed necessary to meet the estimated amount of a federal estate tax in case of death, and thus tend to pre-

vent throwing the bonds on the market and depreciating their market value.

We are of opinion that section 14 requires the holding of the 4¼ per cent. bonds, however acquired, to have been for a time not less than six months next preceding the death, in order to be receivable in payment of the federal estate tax. This conclusion is in harmony with the rulings of the Treasury Department on the same question.

The decree is reversed, with direction to sustain the government's demurrer, and to dismiss the bill.